UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO: 1:17-cv-00182-GNS
Removed from Allen Circuit Court
Case No. 17-CI-00364
Electronically filed

CHAD OWENS

AND

KRISTIE OWENS, INDIVIDUALLY,
AND AS PARENTS AND NATURAL
GUARDIANS OF Z.O. AND R.O.                                              PLAINTIFFS

V.

GLOBAL EQUIPMENT COMPANY, INC.
D/B/A GLOBAL INDUSTIRAL EQUIPMENT,
A WHOLLY OWNED SUBSIDIARY OF SYSTEMAX, INC.

AND

HU-LIFT EQUIPMENT (USA), INC.                                           DEFENDANTS

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS Z.O.
AND R.O.'S CLAIMS FOR IMPAIRMENT OF THEIR RELATIONSHIP
WITH THEIR FATHER, CHAD OWENS**

**** **** **** **** ****

Plaintiffs, Chad Owen and Kristie Owens, individually and as parents and natural guardians of Z.O. and R.O., for their response to Defendants' motions to dismiss the impairment of parental consortium claims of Z.O. and R.O., [D.E.6 and 8] state as follows:

Z.O. and R.O.'s claims for the impairment of their father's service, assistance, aid, protection and parental relationship arise out of the permanent, life-altering injuries that befell him father on October 17, 2106. On that day, Chad Owens was working in the course of his employment at Sumitomo Electric Wiring, Inc. Chad was placing a piece of heavy equipment on the factory floor which was being held up by hydraulic jacks manufactured by defendant, Hu-

Lift Equipment (USA) Inc., and distributed and sold by defendant, Global Equipment Company, Inc. Suddenly and without warning, the jacks failed. Chad's hands were pinned beneath the heavy machinery for several minutes while his coworkers desperately tried to lift the equipment and free him.

Chad suffered the amputation of his left small finger from the top of the knuckle, left ring finger tip amputation, right hand middle and ring finger amputation to the top of knuckle, a crush injury to his thumb and tendon and nerve damage to both hands. Due to Chad's severe and permanent injuries, he is unable to provide the level of protection, care and interaction to which his minor children had grown accustomed prior to October 17, 2016. Their loss is the subject of the defendants' motion to dismiss.

## ARGUMENT

Defendants argue that Z.O and R.O.'s claim for loss of parental services and care is unavailable under current Kentucky law. Plaintiffs acknowledge that the cases cited in support of the motions do not reflect favorably on such claims. However, Plaintiffs believe that the facts of this case as well as a recent examination of *Giuliani v. Guiler,* 951 S.W.2d 318 (Ky. 1991) by the Kentucky Supreme Court in *Martin v. Ohio Co. Hosp. Corp.*, 295 S.W. 3d 104 (Ky. 2009) counsel in favor of a further evaluation of the law as it now stands in the Commonwealth. The Kentucky Supreme Court's thoughtful discussion of *Giuliani* in the *Martin* opinion recognizing that a claim for loss of spousal consortium extends after the spouse's death gives credence to the position that the same court would recognize a claim for impairment of the parent/child relationship, even in the absence of a fatal injury to the parent.

Defendants' primarily rely on a Kentucky Court of Appeals decision from 2000 that predicted that the Kentucky Supreme Court would hold that a minor child's cause of action for

loss of parental services and affection is only viable when attached to a wrongful death claim. *Lambert v. Franklin Real Estate Company,* 37 S.W. 3d 770 (Ky.App. 2000). The *Lambert* Court noted that the landmark Kentucky Supreme Court decision in *Giuliani* "does not explicitly state whether the cause of action approved was for wrongful death only, or whether such cause of action is also available in cases... where the parent is severely injured." *Id* at 780. The court reasoned that based upon the language, context, and absence of a direct holding, *Giuliani* is best read as providing a cause of action for loss of parental consortium only when accompanied by a claim for the wrongful death of a parent. *Id.*

Interestingly, in addition to the discussion of whether a loss of parental consortium claim can exist under Kentucky law*, Giuliani* also contains a thorough discussion of *stare decisis* and the Court's "authority and responsibility to modify loss of consortium as a common law doctrine when necessary." *Giuliani* at 320. The facts of the case at hand provide such an opportunity to address the law as it stands seventeen years after *Lambert.*

Although, thankfully, the incident of October 17, 2016 did not take Chad Owen's life, it significantly and forever altered it. His injuries are severe, permanent, and physically and mentally debilitating. That day, Chad lost the ability to fully care for himself, and in turn, the two minor children under his care, whose claims are at issue here.

In diversity cases such as the present action, this Court must apply the law of Kentucky's highest court. *See Erie R.R. v. Thompkins*, 304 U.S. 64 (1938). When the state's highest court has not decided the applicable law, the Court must attempt to ascertain it "from all relevant data." *Bailey v. v. & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985). "Relevant data" include state appellate court decisions, but the Sixth Circuit has also recognized that the state supreme court's *dicta*, restatements of law, law review commentaries, and the majority rule among other states

may also be weighed by the District Court in making its decision. *See Angelotta v. American Broadcasting Corp.*, 820 F.2d 806, 807 (6th Cir.1987).

The Kentucky Supreme Court has stated, "[c]ommon law grows and develops and must be adapted to meet the recognized importance of the family, and the necessity for protection by the law of the right of a child to a parent's love, care and protection so as to provide for the complete development of that child." *Giuliani* at 320. As in a claim for the wrongful death of a parent, children whose parent suffers sufficiently severe, permanent, and debilitating injuries, such as the injuries sustained by Chad Owens, have their childhood and lives inalterably effected when such an injury occurs. A child's right to recover for their loss should not depend on whether or not the parent's life was fully extinguished. A properly instructed jury will be able to evaluate and make the determination as to the extent of a child's damages even in the absence of the parent's death.

Defendants' motions rely on the argument that a child's right to a loss of consortium claim is the reciprocal of the right bestowed by KRS 411.135, which allows parental recovery for loss of a child's consortium in a wrongful death action. However, the Court in *Guiliani* relied upon further factors which would seem to support the claim existing outside a wrongful death action. In addition to the loss of a child's consortium statute, the Court looked to KRS 600.010 where the legislature made it "the expressed public policy of the Commonwealth to protect and care for children in a nurturing home," *Giuliani* at 319. Further, the Court stated:

> It is a natural development of the common law to recognize the need for a remedy for those children who lose the love and affection of their parents due to the negligence of another. *Id*.

Here, Z.O. and R.O., have had their father's ability to care, protect, and actively participate in their lives due to the negligence of another altered forever. As such, they should be afforded a remedy for their loss.

The *Giuliani* Court, in attempting to conform the loss of consortium doctrine "to the changing conditions of our society" looked to the fact that at the time of the decision "15 courts and two state legislatures have recognized the claim of children for loss of parental consortium." *Id.* Of the 15 cases cited by the Court, 12 of the cases involved actions in which no wrongful death claim was involved.[1] *Giuliani* at 319-20. The Court was persuaded by an Iowa case, *Weitl v. Moses*, 311 N.W.2d 259 (Iowa 1981), that did not relate to a wrongful death claim. *Giuliani* at 319. This only serves to further the notion that such claims should be actionable under the law of the Commonwealth as well. Such a holding would only inure to the benefit and protection of children that both the Legislature and the Court have sought to provide.

This Court has previously followed the Kentucky Court of Appeals holding in *Lambert*. *See Brown v. Mason & Dixon Lines, Inc.,* No.3: 07CV-712-R, 2008 LEXIS 42062, at *6 (W.D. Ky. May 23, 2008). However, that decision was rendered before the Kentucky Supreme Court's more recent review of *Giuliani* and expansion of loss of consortium jurisprudence in *Martin v. Ohio Co. Hosp. Corp.,* 295 S.W. 3d 104 (Ky. 2009). In *Martin*, the Court reversed the Court of Appeals and overruled two of its own prior decisions, liberalizing the Court's view of consortium claims by holding that a spouse's loss of consortium claim no longer terminates at the other spouse's death. *See Martin*, 295 S.W. 3d at 111.

---

[1] Ferriter v. Daniel O'Connell's Sons, Inc., 413 N. E.2d 690 (Mass. 1980); Berger v. Weber, 303 N.W. 2d 424 (Mich.1981); Theama v. Kenosha, 344 N.W. 2d 513 (Wisc. 1984); Ueland v. Reynolds Metals Co. 691 P.2d 190 (Wash. 1984); Hay v. Medical Center of Vermont, 496 A. 2d 939 (Vt. 1985); Hibpshman v. Prudhoe Bay Supply Inc. 734 P.2d 991 (Alaska 1987); Villareal v. State Dept. of Transportation, 774 P.2d 213 (Ariz. 1989); Williams v. Hook, 804 P. 2d 1131 (Okla. 1990); Nulle v. Gillette-Campbell Fire Bd., 797 P.2d 1171 (Wyo. 1990); Belcher v. Goins, 400 S.E. 2d 830 (W.Va. 1990); Reagan v. Vaughn, 804 S.W.2d 463 (Tex. 1990); Pence v. Fox, 813 P.2d 429 (Mont. 1991).

One passage in *Martin* is particularly meaningful to this Court's analysis and ability to predict what the Kentucky Supreme Court would do if confronted with the viability of a child's claim for loss of a parent's companionship, protection and care in non-death cases:

> At the crux of this [spousal consortium] claim is compensation for **loss of the most compelling of human relationships, other than possibly that of a parent and a child**. Our legislature did not intend, nor does this Court, to devalue that relationship by putting an arbitrary limit on the duration of what can be profound loss. Our statute permits that loss to be evaluated by a jury, and therefore it is the right of bereaved spouses to have such an evaluation.

*Martin*, 295 S.W.3d at 111 (emphasis added). In this passage, the Kentucky Supreme Court delivered a crystal clear message: both it and the Kentucky Legislature regard both marital and parent/child relationships as "the most compelling of human relationships," worthy of protection and capable of evaluation by a jury when impaired.

This recent, explicit recognition of the societal import and worth of a child and parent's relationship by the Kentucky Supreme Court in *Martin* is a significant, persuasive data point that counsels in favor of this Court permitting Z.O. and R.O.'s claim to survive defendants' motion to dismiss. There can be no dispute that a child suffers a real, cognizable injury when a parent sustains a permanent, disabling injury. The arbitrary line drawn by the *Lambert* decision between a parent's death being a compensable event and, for example, a permanent, comatose state or full-body paralysis being non-compensable is illogical and untenable in today's society. This is implicitly, if not explicitly, recognized by the Kentucky Supreme Court's proclamation that there is likely no more compelling relationship than that between a parent and a child. Although, thankfully, Chad Owens did not sustain an injury that paralyzed him or put him in a coma, his

injuries are nevertheless permanent and life-altering for all those impacted by them, including his children.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that the claims for Z.O. and R.O. for their loss of parental consortium due to the severe, permanent, and physically and mentally debilitating injuries suffered by their father due to the negligence of the Defendants, should not be dismissed.

Respectfully Submitted,

/s/ Shea W. Conley, Esq.
Shea W. Conley, Esq.
Morgan & Morgan
333 West Vine Street, Suite 1200
Lexington, Kentucky 40507
(859) 286-8364
Sconley@forthepeople.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2017, a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/WCF system, which will send a notice of electronic filing to the following:

Douglas C. Ballantine, Esq.
Chadler M. Hardin, Esq.
Stoll, Keenon Ogden PLLC
2000 PNC Plaza
500 West Jefferson Street
Louisville, Kentucky 40202

Kelly M. Rule, Esq.
Charles H. Cassis, Esq.
Goldberg, Simpson, LLC
Norton Commons
9301 Dayflower Street
Prospect, Kentucky 40059

                                                /s/ Shea W. Conley, Esq.
                                                Shea W. Conley, Esq.